UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY S. KALICH,

        Plaintiff,                      Case Number 09-14781
                                                   Honorable David M. Lawson

v.

AT&T MOBILITY, LLC,

        Defendant.
_____/

## **OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the defendant's motion for summary judgment seeking dismissal of the plaintiff's claim of sexual harassment in the workplace creating a hostile work environment. The claim is based on state law, and the Court has jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. The plaintiff acknowledges that no one employed by the defendant made sexual advances toward him or requested sexual favors. Instead, he contends that his immediate supervisor, David Rich, made unwelcome verbal communication of a sexual nature that created intolerable working conditions. The defendant argues Rich's comments do not pertain to sex, and sexual harassment claims premised on Rich's name calling are not actionable. The defendant also argues that it took prompt remedial action upon learning of Rich's offensive behavior. The Court heard oral argument on October 18, 2010. The Court finds that only one of Rich's comments could possibly fit the definition of sexual harassment, and although Rich certainly made the work environment intolerable, no rational trier of fact could find that Rich's comment *based on the plaintiff's sex* created a hostile work environment. Therefore, the defendant's motion for summary judgment will be granted.

I.

There does not appear to be much dispute over the facts of the case. The defendant hired the plaintiff on May 19, 2008 as a store manager for the defendant's Clarkston store, which sold cellular telephones and related products. The plaintiff supervised up to twelve store employees and was responsible for disciplining and motivating the staff, attending to customers' needs, addressing customer complaints, and managing the business of the retail sales store. The plaintiff also instructed his employees regarding acceptable conduct in the workplace.

David Rich, the defendant's area sales manager, was the plaintiff's immediate supervisor. Rich visited the plaintiff's store approximately ten times per month. On those memorable occasions, Rich was rude and aggressive to all the store employees; he generally yelled at them and made threatening and fear-inducing comments. The plaintiff testified that Rich "thrived" on that style of "leadership."

The plaintiff stated that Rich also made various inappropriate comments to him, allegedly in reference to the plaintiff's homosexuality. Rich repeatedly referred to the plaintiff as a female, told him he should change his name to a girl's name, referred to the plaintiff's small dog as "Fluffy," and told the plaintiff he looked like a girl. On one occasion, Rich told the plaintiff that his glasses made him look like a librarian, and he called the plaintiff Virginia, Margaret, Peggy, Susan, and Christine in front of coworkers.

The plaintiff admits that Rich also called the plaintiff by male-oriented names such as Irving, Potter, Simon Rabinovitz, and Superman; and gender-neutral names such as "E-peg," which referred to the empty display pegs in the plaintiff's store, meaning store inventory had not been replenished; and "Pebbles," because the plaintiff complained about someone throwing small rocks at his car.

Rich did not make any gender specific or sexual orientation comments to any other employee. The plaintiff admits that Rich never made any noticeable sexual advances or indicated any sexual interest in him.

It is apparent, however, that Rich's comments were targeted toward the plaintiff because Rich perceived him to be a homosexual. For example, on several occasions Rich asked the plaintiff if the human rights sticker he displayed on his car actually was the Swedish flag, in order to ridicule the plaintiff's support for gay and lesbian civil rights organizations. He commented that the plaintiff's clothes fit so loosely that he was wasting away and looked like a girl. And he characterized the plaintiff as engaging in feminine activities, like sewing.

The defendant has a code of business conduct that forbids sexual and other unlawful harassment, and the plaintiff knew that he could report any claims of harassment using the defendant's internal procedures, anonymously if desired. Other employees encouraged the plaintiff to report Rich's conduct, but the plaintiff refused. The plaintiff contacted an attorney, and on March 19, 2009 his attorney sent a formal complaint letter to Rich's supervisor regarding Rich's comments.

On March 25, 2009, Rich told the plaintiff and all of the plaintiff's coworkers that the plaintiff had sex with dead people. Remarkably, the next day Rich returned to the store and continued to tell the plaintiff's coworkers that the plaintiff had sex with dead people and boasted that he made the plaintiff cry because he called the plaintiff a necrophiliac.

The plaintiff's last contact with David Rich was on March 25, 2009, six days after the defendant received the plaintiff's complaint letter. In early April 2009, the defendant's internal Equal Employment Opportunity (EEO) department initiated an investigation into the plaintiff's complaint and questioned all of the employees at the Clarkston store. During the investigation, Rich

was prohibited from having any contact with the plaintiff. As a result of the investigation, the defendant transferred Rich out of the region on April 16, 2009, issued Rich a final written warning, and required him to take classes. The plaintiff requested a thirty-day leave of absence. The defendant could not grant the plaintiff's thirty-day request, but Ken Gaffga (Rich's supervisor) allowed the plaintiff to take a few days off.

While on leave of absence, the plaintiff determined that he was not happy with the results of the investigation because he feared that he would encounter David Rich on occasion, even though they were not in the same chain of command. On April 13, 2009, the plaintiff voluntarily gave two weeks notice that he would be resigning his employment at the end of the month. The plaintiff returned to work on April 17, 2009 and continued to work through April 28, 2009. The plaintiff offered to continue working through May 2009 if the defendant needed his help.

The plaintiff filed his complaint alleging that the defendant is liable for the hostile work environment created by Rich's despicable conduct toward him, and therefore accountable for sexual harassment under the Michigan Elliott-Larsen Civil Rights Act. Following the discovery period, the defendant filed the present motion for summary judgment, to which the plaintiff responded.

II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted).

The case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the plaintiff's claim is based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey*

*v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant dicta, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotes and citation omitted).

Michigan's Elliott-Larsen Civil Rights Act (ELCRA) prohibits employers from discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of sex, Mich. Comp. Laws § 37.2202, and discrimination based on sex includes sexual harassment. Mich. Comp. Laws § 37.2103(i).

> [S]exual harassment is specifically defined to include "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . ."

*Chambers v. Trettco, Inc.*, 463 Mich. 297, 309-10, 614 N.W.2d 910, 915 (2000) (quoting Mich. Comp. Laws § 37.2103(i)(*i*)-(*iii*)). As noted earlier, the plaintiff's complaint focuses on the third component of this definition, since Rich never made submission to sexual advances a *quid pro quo* of the plaintiff maintaining his job or enjoying favorable employment terms. Instead, the plaintiff alleges that David Rich sexually harassed him.

The Michigan Supreme Court has held that "actionable sexual harassment requires conduct or communication that inherently pertains to sex." *Corley v. Detroit Bd. of Educ.*, 470 Mich. 274,

279, 681 N.W.2d 342, 345 (2004); *see Haynie v. Michigan*, 468 Mich. 302, 312, 664 N.W.2d 129, 135 (2003). The plaintiff need not prove that the harasser's conduct or communication arose from a sexual desire for the plaintiff. *Robinson v. Ford Motor Co.*, 277 Mich. App. 146, 155, 744 N.W.2d 363, 368 (2008). However, "conduct or communication that is gender-based, but that is not sexual in nature, cannot constitute sexual harassment. *Haynie*, 468 Mich. at 312, 664 N.W.2d at 135. The Michigan courts have held that conduct or communication based on a person's sexual orientation does not constitute sexual harassment under ELCRA. *Barbour v. Dep't of Soc. Serv.*, 198 Mich. App. 183, 185, 497 N.W.2d 216, 218 (1993). In so holding, the *Barbour* court looked to analogous federal precedent decided under Title VII of the Civil Rights Act of 1964 and concluded "that harassment or discrimination based upon a person's sexual orientation is not an activity proscribed by the act." *Id.* at 185-86, 407 N.W.2d at 217-18. That holding is consistent with the Sixth Circuit's construction of Title VII. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761-62 (6th Cir. 2006).

An employee may maintain an action under Title VII for gender stereotyping, that is, where employment decisions or workplace harassment are based on the perception that the employee is not masculine enough or feminine enough and he or she fails "to conform to [gender] stereotypes." *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989); *Vickers*, 453 F.3d at 762. But that is not exactly what the plaintiff alleges here. Rather, the complaint and the discovery lay out a pattern of conduct by David Rich that is designed to ridicule the plaintiff's effeminate characteristics, which Rich perceived to arise from his homosexuality. The Sixth Circuit has drawn a fine distinction between such a claim and gender stereotyping, concluding that the later is actionable under Title VII, but the former is not. *Vickers*, 453 F.3d at 763 ("Vickers contends that in the eyes of his

co-workers, his sexual practices, whether real or perceived, did not conform to the traditionally masculine role. Rather, in his supposed sexual practices, he behaved more like a woman. . . . We conclude that the theory of sex stereotyping under *Price Waterhouse* is not broad enough to encompass such a theory. . . . [T]he harassment of which Vickers complains is more properly viewed as harassment based on Vickers' perceived homosexuality, rather than based on gender non-conformity."). Other federal circuits have reached the same conclusion. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005); *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 265 (3d Cir. 2001); *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999). Because of the Michigan courts' practice of considering federal precedent under Title VII when construing ELCRA, *see Barbour*, 198 Mich. App. at 185-86, 497 N.W.2d at 217-18, the Court believes that the Michigan Supreme Court would also conclude that a sexual harassment claim based on a plaintiff's perceived homosexuality would not fall within a gender stereotyping claim, if one were recognized under ELCRA.

Under Michigan law, sexual harassment that substantially interferes with an individual's employment is referred to as hostile work environment harassment. *Radtke v. Everett*, 442 Mich. 368, 381, 501 N.W.2d 155, 161 (1993). In order to establish a claim of hostile environment harassment, an employee must prove the following elements:

> (1) the employee belonged to a protected group;
> (2) the employee was subjected to communication or conduct on the basis of sex;
> (3) the employee was subjected to unwelcome sexual conduct or communication;
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
>
> (5) respondeat superior.

*Id.* at 382-83, 501 N.W.2d at 162.

"All employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex." *Id.* at 383, 501 N.W.2d at 162. However, in order to satisfy the second element that the communication in fact was on the basis of sex, the plaintiff must show that "but for [his] sex, he would not have been the object of harassment." *Id.* at 383, 501 N.W.2d at 163. There are three

> evidentiary routes that allow male plaintiffs to establish a hostile-work-environment claim based on same-gender harassment: (1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; and (3) where the plaintiff offers direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.

*Robinson*, 277 Mich. App. at 157, 744 N.W.2d at 370 (quotation marks omitted). Also, with respect to the third element, the conduct or communication must be unwelcome and pertain inherently to sex. *Corley*, 470 Mich. at 279, 681 N.W.2d at 345.

The evidence that Rich's campaign of harassment and ridicule against the plaintiff was based on sex is wanting on this record. It must be acknowledged that only Rich's necrophilia comment inherently pertains to sex. The rest of his comments, even if they were made based on the plaintiff's gender or sexual orientation, do not constitute sexual harassment under Michigan law because they do not inherently pertain to sex. There is no evidence that Rich's pair of comments suggesting that the plaintiff copulated with corpses was leveled at the plaintiff because of his sex. In other words, although the comment certainly was sexual in nature, there is no evidence that Rich made it in order to treat the plaintiff harsher than employees of the opposite gender.

The fourth element requires that,

> in the totality of the circumstances, the work environment [be] so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment.

*Radtke*, 442 Mich. at 395, 501 N.W.2d at 169. When determining whether comments were of a type, severity, and duration to have created an objectively hostile work environment, court looks at "all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinto v. Cross & Peters Co.*, 451 Mich. 358, 370 n.9, 547 N.W.2d 314, 320 n.9 (1996) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "It is only when the workplace is 'permeated' with discriminatory intimidation, ridicule and insult that the Civil Rights laws are implicated." *Schemansky v. California Pizza Kitchen, Inc.*, 122 F. Supp. 2d 761, 777 (E.D. Mich. 2000) (citing *Harris*, 510 U.S. at 21).

The evidence in this case confirms that Rich made working conditions extremely unpleasant. It is fair to say that he targeted the plaintiff because of his perceived sexual orientation. But Rich's harassment amounted to little more than name-calling. And the name-calling, with the exception of the necrophilia comments, were not based on sex. Neither name-calling nor harassment based on sexual orientation is protected under Michigan law. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation omitted)); *Barbour*, 198 Mich. App. at 185, 497 N.W.2d at 217-18.

The two sexual comments mentioning necrophilia do not constitute severe or pervasive conduct. The plaintiff was present only for the first utterance by Rich on March 25, 2009. The

second incident occurred in the presence of the plaintiff coworkers, but not the plaintiff. Michigan courts have held that single incidents of misconduct rarely amount to a hostile work environment, and the rare cases must involve severe misconduct. *Radtke*, 442 Mich. at 394-95, 501 N.W.2d at 168 ("Although rare, single incidents may create a hostile environment — rape and violent sexual assault are two possible scenarios. . . . Although the same conduct perpetrated by a co-worker might not constitute a hostile work environment, when an employer in a closely knit working environment physically restrains an employee and physically attempts to coerce sexual relations, the totality of the circumstances permits a jury to determine whether defendant's conduct was sufficient to have created a hostile work environment."). Generally, however, a single incident fails to establish a severe and pervasive environment. *See McCallum v. Dep't of Corr.*, 197 Mich. App. 589, 496 N.W.2d 361 (1992) (finding that a single incident of a prisoner grabbing a female prison guard's crotch was not sufficiently severe or pervasive to establish hostile work environment and distinguishing *Radtke*'s single incident liability); *Langlois v. McDonald's Rests. of Mich., Inc.*, 149 Mich. App. 309, 385 N.W.2d 778 (1986) (finding that one request for "some fun" and touching did not constitute severe and pervasive conduct).

Analogous federal law tracks this proposition as well. See *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (where supervisor requested sexual favors from the plaintiff in exchange for a better evaluation, called her "hot lips," made comments about her state of dress, and told dirty jokes in front of her, the court stated that "[a]lthough [the employer's] purported sexual advance was truly offensive, it was the only advance that [the employer] allegedly made"); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981, 984-85 (6th Cir. 2000) (where supervisor placed a pack of cigarettes under the plaintiff's bra strap, remarked she "lost her cherry," and after she wore

a sweatshirt that read "Deck the Malls" stated "dick the malls, dick the malls, I almost got aroused," the Court held that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-23, 826 (6th Cir. 1997) (court found insufficient evidence of a hostile work environment where the employer, while reaching for a pastry, stated "nothing I like more in the morning than sticky buns"; joked that a parcel of land next to a Hooters Restaurant be named "Hootersville" or "Titsville" or "Twin Peaks"; teased the plaintiff about her pronunciation of the word "bosom"; asked plaintiff if she was at a biker bar the previous night dancing on tables; and called her a "broad").

Finally, "[r]espondeat superior liability can be imposed on an employer . . . 'only if the employer had reasonable notice of the harassment and failed to take appropriate corrective action.'" *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 489 (6th Cir. 2006) (quoting *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 426, 697 N.W.2d 851, 861 (2005)). "[N]otice . . . is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring. *Chambers*, 463 Mich. at 319, 614 N.W.2d at 919. "[T]he relevant inquiry concerning the adequacy of the employer's remedial action is whether the action is reasonably served to prevent future harassment of the plaintiff." *Ibid.*

The plaintiff in this case chose to forgo the defendant's internal complaint system even though he knew he could report Rich's conduct anonymously. The defendant did not, and could not, have adequate notice of Rich's behavior until the plaintiff's attorney notified Ken Gaffga, Rich's

supervisor, of the plaintiff's complaints on March 19, 2009. The defendant initiated an investigation in early April 2009 and prohibited Rich from having contact with the plaintiff during the investigation. After completing the investigation, the defendant transferred Mr. Rich. The defendant's remedial action was swift and aimed at ending Mr. Rich's comments.

Unlike federal employment discrimination law, where the employer's prompt remedial action is an affirmative defense to a hostile work environment on which the employer has the burden of proof, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), under Michigan law the element of *respondeat superior* requires a showing by the plaintiff that an employer had notice of the alleged conduct constituting harassment and failed to take corrective action. *Elezovic*, 472 Mich. at 427, 697 N.W.2d at 861; *McCarthy v. State Farm Ins. Co.*, 170 Mich. App. 451, 457, 428 N.W.2d 692, 694-95 (1988) ("Where . . . the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or coworker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action."). The plaintiff does not dispute that the defendant commenced an investigation within three weeks of learning of the plaintiff's complaints about Rich, and that the investigation isolated Rich from the plaintiff and resulted in Rich's reassignment and discipline. The Court believes, therefore, that the undisputed facts would not permit the plaintiff to establish this element of his claim.

The conduct of David Rich was crude, bullying, despicable, and may even have been intended to cause the plaintiff emotional distress. However, it is not actionable under the sexual harassment hostile work environment provisions of ELCRA. The defendant, therefore, is entitled to judgment on the complaint as a matter of law.

III.

The Court finds that there is no material fact issue that precludes summary judgment, and the plaintiff has not come forward with evidence that requires resolution by a jury of all the elements of his claim.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt #17] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 2, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 2, 2010.

s/Deborah R. Tofil
DEBORAH R. TOFIL